Nicholas R. Webb, RN, DNP, ESQ. (SBN 332586)
**BalestraWebb Law**
1426 Plaza De Oro
Benicia, CA 94510
Phone: 844-MED-LAWS
Email: Nick@BalestraWebb.com

Attorney for Plaintiff
LAILA FARHAT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LAILA FARHAT<br>Plaintiff,<br><br>v.<br><br>CUTERA, INC.,<br>Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) Intentional Misrepresentation / Fraudulent Inducement**<br>**(2) Promissory Fraud**<br>**(3) Breach of Written Contract**<br>(4) **Restitution / Rescission, Pled in the Alternative**<br>(5) **Breach of Express Warranty** |

Plaintiff LAILA FARHAT alleges against Defendant Cutera, Inc. ("Cutera") as follows:

## PARTIES

1. Plaintiff Laila Farhat is an individual domiciled in, and therefore a citizen of, New York who owns and operates Jana HealthCare as her sole proprietorship/d/b/a.

2. Jana HealthCare is not a separate legal entity from Plaintiff.

3. Plaintiff is the contracting party, payer, and real party in interest with respect to the Purchase Agreement at issue in this action.

4. Plaintiff owns and operates Jana HealthCare, a primary care clinic located in Brooklyn, New York.

5. Defendant Cutera, Inc. is a Delaware corporation with its principal place of business in Brisbane, California.

6. At all relevant times, Sharon Burke, Mary Evans, John Hicks, Katie Collins, and other Cutera personnel acted as employees, agents, representatives, and/or apparent agents of Cutera within the course and scope of their employment or agency.

7. Cutera authorized, accepted, ratified, or retained the benefits of the acts, omissions, and representations of its personnel alleged in this Complaint.

## JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

9. Plaintiff is a citizen of New York.

10. Defendant is a citizen of Delaware and California.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs. The Secret RF device purchase price was $75,000, plus freight and applicable tax. Plaintiff also incurred or became obligated to pay financing-related charges and other transaction-related expenses. Plaintiff seeks, among other things, rescission, restitution of amounts paid or incurred in connection with the transaction, damages caused by delayed installation and missing hardware, wasted launch-event and marketing expenses, damages caused by the failed AEVA marketing and referral rollout, and punitive damages on the fraud-based tort claims according to proof.

12. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

13. This Court also has personal jurisdiction over Defendant because Defendant entered into a written Purchase Agreement and Master Terms and Conditions selecting the United States District Court for the Northern District of California as one of the exclusive forums for actions relating to Plaintiff's order and the transaction at issue.

**VENUE**

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(2), and (d) because Defendant Cutera, Inc. resides in this District for venue purposes.

15. Venue is also proper because the written Purchase Agreement and Master Terms and Conditions provide that actions relating to Plaintiff's order and the transaction at issue may be heard in the United States District Court for the Northern District of California.

**GENERAL ALLEGATIONS**

16. In or about May 2023, Cutera sales representative Sharon Burke visited Plaintiff's office at Jana HealthCare in Brooklyn, New York, to solicit the sale of a Secret RF device.

17. During that solicitation, Sharon Burke promoted the Secret RF device as particularly effective for acne scars, stretch marks, and skin texture concerns, and stated that the device could generate a commercially viable new service line for Jana HealthCare. Plaintiff does not rely on generalized sales praise alone as the basis for her fraud claims. Plaintiff relied on Cutera's specific factual representations and promises concerning existing demand, Cutera's referral infrastructure, AEVA marketing, clinical training, and post-sale rollout support.

18. Plaintiff did not immediately agree to purchase the device.

19. Burke urged Plaintiff to attend a Cutera promotional event for further information.

20. On June 11, 2023, Plaintiff attended the Cutera NYCAS event at the Conrad Downtown Hotel, 102 North End Avenue, 2nd Floor, New York, New York.

21. At that event, Burke and other Cutera personnel conducted sales presentations and live demonstrations concerning the Secret RF device.

22. During the June 11, 2023 event, Burke made both representations of existing fact and promises of future performance. Burke represented as existing facts that:

a. Cutera had information showing strong demand for Secret RF treatments in Plaintiff's geographic area;

b. Cutera had an existing referral or provider-placement infrastructure for patients seeking Secret RF treatments;

c. Cutera could place Jana HealthCare into that referral infrastructure based on geographic proximity; and

d. Cutera had an existing AEVA marketing-support program available for Plaintiff's transaction.

Burke also promised that Cutera would:

e. provide in-person clinical training for Plaintiff and her staff;

f. provide ongoing technical and account support;

g. provide six months of AEVA marketing support;

h. provide or facilitate direct patient referrals through Cutera's referral network; and

i. remain personally involved in the rollout of the Secret RF service and in helping Plaintiff build clientele.

23. These statements and promises were material because Jana HealthCare was primarily a primary care clinic and not primarily an aesthetic clinic.

24. Plaintiff depended on the represented performance of the device and on Cutera's promised support, referrals, and marketing assistance in deciding whether the purchase was commercially viable.

25. On June 11, 2023, Plaintiff and Cutera executed a written Purchase Agreement for one Secret RF device.

26. The Purchase Agreement identified the customer as Jana HealthCare, listed Plaintiff as the customer contact, and was signed by Plaintiff as customer representative and by Burke as Cutera representative.

27. The Purchase Agreement identified the product as a "Secret RF" 2 MHz RF microneedling device featuring two handpieces, standard and high-speed, and listed included microneedle tip boxes.

28. The Purchase Agreement stated a product price of $75,000, plus freight and applicable tax.

29. The Purchase Agreement also contained the handwritten term "Aeva Marketing 6 mo."

30. The Purchase Agreement further stated: "Clinical Training to take place within 90 days of purchase," for one day.

31. The Purchase Agreement incorporated Cutera's Master Terms and Conditions.

32. The Master Terms and Conditions provide that California law governs disputes relating to the order and that any action relating to the order shall be heard exclusively in San Mateo County Superior Court or the United States District Court for the Northern District of California.

33. The Master Terms and Conditions also provide that the prevailing party in an action relating to an order is entitled to recover reasonable and necessary attorneys' fees and other costs incurred as a result of bringing the action.

34. In reliance on Burke's statements and promises, and in reliance on the written terms of the

Purchase Agreement, Plaintiff agreed to purchase the Secret RF device.

35. Delivery of the device to Jana HealthCare occurred in or around mid-June 2023.

36. When the device was delivered, it was not complete and ready for use.

37. Essential hardware, including screws, was missing from the shipment.

38. Because of the missing hardware, Plaintiff could not properly assemble and place the device into service.

39. On or about June 13, 2023, Plaintiff contacted Burke regarding installation and support.

40. Burke did not personally provide the assistance she had promised. Instead, she referred Plaintiff to Mary Evans, whom Plaintiff understood to be a Cutera Key Account Manager.

41. Plaintiff continued to follow up with Cutera during June and July 2023 regarding the missing parts, installation issues, training, marketing, and support.

42. On or about July 17, 2023, Burke sent contact information for Dan Ressler and John Hicks and then ceased responding to Plaintiff.

43. Plaintiff later learned that Burke had left Cutera.

44. In July 2023, John Hicks identified himself to Plaintiff as a Cutera representative and communicated with Plaintiff regarding the payment terms, AEVA, training, and post-sale support.

45. Hicks told Plaintiff that the payment terms were for the device, not AEVA, and that AEVA needed to see the agreement and how Plaintiff was paying Cutera so AEVA would know how it was getting paid.

46. Those communications confirmed that AEVA marketing and coordination were material parts of the transaction.

47. After repeated follow-up, Hicks eventually came to Plaintiff's clinic in late July 2023 to address missing parts and installation issues.

48. By then, installation had already been delayed, and the device had not been delivered in assembled, ready-to-use condition.

49. The only training Plaintiff and her staff actually received was approximately thirty minutes of basic demonstration by a nurse affiliated with Cutera.

50. Cutera did not provide one full day of clinical training within ninety days of purchase as stated in the Purchase Agreement. The only individualized training Plaintiff and her staff received was approximately thirty minutes of basic demonstration by a nurse affiliated with Cutera.

51. Cutera did not provide the six months of AEVA marketing stated in the Purchase Agreement. Although Cutera later sent or referenced isolated items such as posters, flyers, brochures, event invitations, and graphic-design communications, Cutera did not implement a six-month AEVA digital-marketing program, onboarding plan, campaign, or referral-generating rollout for Plaintiff.

52. Cutera did not provide a functioning referral pipeline for Jana HealthCare.

53. Cutera did not provide company-generated patient referrals to Jana HealthCare.

54. Cutera did not provide the continuing account support and ongoing rollout assistance that Burke had represented would be provided.

55. Cutera provided some isolated marketing-related materials and communications, including posters, flyers, brochures, event invitations, and graphic-design coordination. Those isolated materials did not constitute the six-month AEVA marketing program promised in the Purchase Agreement.

56. Plaintiff also continued to report physical installation and hardware problems with the device, including missing screws and an unsecured handle or holster.

57. On or about August 3, 2023, Hicks confirmed that screws for the holster were being shipped,

further confirming that hardware and installation issues remained unresolved after delivery.

58. In September 2023, Plaintiff informed Hicks that she intended to push the Secret RF launch event to October 19, 2023 to allow more time for marketing.

59. Hicks directed Plaintiff to connect with Mary Evans and Katie Collins regarding the event and marketing support, stating that marketing and event support were their department.

60. Despite some isolated communications concerning flyers, posters, brochures, and event logistics, Cutera did not provide meaningful launch support, did not implement the promised six-month AEVA digital-marketing program, and did not provide the referral-generating support that had been represented to Plaintiff.

61. On or about October 20, 2023, after Plaintiff held a Secret RF launch event, Plaintiff informed Hicks that no one from Cutera had attended.

62. Hicks responded by asking whether Plaintiff had planned the event with Cutera's support team or let anyone know, despite Plaintiff's prior communications with Cutera personnel regarding event timing and marketing support.

63. After the device was assembled and placed into limited use, Plaintiff was unable to commercially deploy the Secret RF service as represented because Cutera delayed installation, delivered the device without necessary hardware, failed to provide the promised one-day clinical training within ninety days, failed to implement the promised six-month AEVA marketing program, and failed to provide the promised referral and rollout support.

64. Plaintiff's ability to use the device commercially was impaired by the delayed installation, missing hardware, lack of full clinical training, lack of AEVA marketing implementation, lack of referral support, and lack of meaningful launch support.

65. The promised referral support, commercial rollout, and represented return on investment did not materialize.

66. On or about October 12, 2023, after the ninety-day training period had already expired, Hicks invited Plaintiff to an "advance Clinical forum" for marketing and hands-on training.

67. Plaintiff continued seeking support from Cutera through at least October 20, 2023.

68. Cutera did not provide a refund, exchange, rescission, or meaningful remediation.

69. Plaintiff paid, or became obligated to pay, substantial amounts in connection with the purchase and financing of the device.

70. Plaintiff seeks rescission and restitution in the alternative to damages.

71. Plaintiff has preserved the Secret RF device and is willing to make it available for return, inspection, or other disposition as ordered by the Court.

72. By this Complaint, Plaintiff elects rescission in the alternative to damages and offers to restore or tender the Secret RF device on terms ordered by the Court, subject to appropriate accounting and offsets.

73. Plaintiff is ready, willing, and able to return or tender the Secret RF device upon rescission, subject to appropriate accounting, offsets, and Court order.

74. Plaintiff did not discover, and could not reasonably have discovered, the full nature of Defendant's fraud and false promises at the time of purchase.

75. After the June 11, 2023 Purchase Agreement, Cutera continued communicating with Plaintiff regarding installation, training, payment processing, AEVA, marketing, event support, supplies, hardware issues, and remediation.

76. Based on those continuing communications, Plaintiff reasonably believed Cutera was still in the process of performing its promised obligations and correcting the post-sale issues.

77. Plaintiff discovered the falsity of Cutera's representations and promises only after Cutera failed to provide the promised training, AEVA marketing, referral pipeline, launch support, and meaningful remediation despite repeated follow-up.

78. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages in an amount to be proven at trial, including the $75,000 purchase price, freight, taxes, financing-related charges, expenses associated with delayed installation and missing hardware, wasted launch-event and marketing expenses, and damages caused by the failed AEVA marketing and referral rollout. Plaintiff seeks consequential and lost-business damages to the extent recoverable on her tort claims and not barred by any enforceable contractual limitation.

## FIRST CAUSE OF ACTION

### Intentional Misrepresentation / Fraudulent Inducement

79. Plaintiff incorporates paragraphs 1 through 78.

80. On June 11, 2023, at the Conrad Downtown Hotel in New York, New York, Burke represented to Plaintiff that Cutera had an existing pipeline or referral infrastructure for patients actively seeking Secret RF treatments and that Cutera had information showing strong demand for those treatments in Plaintiff's geographic area.

81. Burke also represented that Jana HealthCare would be placed into Cutera's referral infrastructure or referral list and would receive direct patient referrals based on geographic proximity.

82. These representations concerned existing facts within Cutera's superior knowledge, including Cutera's own referral infrastructure, patient-demand information, provider-placement process, and ability to direct or facilitate patient referrals.

83. These representations were material and were made to induce Plaintiff to purchase the Secret RF device. They preceded the Purchase Agreement and were independent of Cutera's later contractual performance obligations.

84. These representations were false when made. Cutera did not have, or did not make available

to Plaintiff, any functioning referral pipeline, referral list, provider-placement process, or company-generated patient-referral system capable of providing the direct referrals Burke represented Plaintiff would receive.

85. After the sale, Cutera did not place Plaintiff into any functioning referral pipeline, did not send company-generated patient referrals, did not activate any six-month AEVA digital-marketing program for Plaintiff, and did not provide the promised one-day clinical training within ninety days.

86. These facts support the reasonable inference that Cutera's representations about existing demand, referral infrastructure, provider placement, AEVA marketing support, and post-sale rollout support were false or made recklessly when stated.

87. Defendant knew these representations were false, or made them recklessly and without reasonable grounds for believing them to be true.

88. Defendant intended for Plaintiff to rely on these representations and purchase the Secret RF device.

89. Plaintiff reasonably relied on these representations in deciding to purchase the device. Plaintiff's reliance was justified because Cutera, through Burke and other personnel, had superior knowledge of Cutera's own referral infrastructure, patient-demand information, AEVA marketing program, training availability, account-support capabilities, and device rollout process. Plaintiff was a primary care clinician operating a clinic that was not primarily an aesthetic practice, and she did not have equal access to Cutera's internal referral, marketing, training, or rollout information before purchase.

90. Plaintiff would not have purchased the device, or would not have paid the price she paid, absent these representations.

91. Plaintiff suffered damage as a direct and proximate result.

92. Defendant's conduct was fraudulent, malicious, and oppressive, and Plaintiff seeks punitive damages on the fraud-based tort claims according to proof, subject to the requirements for imposing punitive damages against a corporate defendant.

93. Cutera ratified the fraudulent, malicious, and oppressive conduct by accepting and retaining the benefits of the sale after Plaintiff repeatedly complained about incomplete delivery, missing hardware, inadequate training, lack of AEVA marketing, lack of referrals, and lack of promised post-sale support.

94. Cutera accepted and retained the benefits of the sale after Plaintiff repeatedly complained about incomplete delivery, missing hardware, inadequate training, lack of AEVA marketing, lack of referrals, and lack of promised post-sale support. Cutera personnel responsible for Plaintiff's account had notice of those complaints and failed to provide a refund, exchange, rescission, or meaningful remediation.

## SECOND CAUSE OF ACTION

### Promissory Fraud

95. Plaintiff incorporates paragraphs 1 through 94.

96. In May 2023 and again on June 11, 2023, Burke promised Plaintiff that Cutera would provide:

a. in-person clinical training for Plaintiff and her staff;

b. ongoing technical and account support;

c. six months of AEVA marketing support;

d. direct patient referrals or referral support through Cutera's referral network; and

e. Burke's continuing involvement in the rollout of the service and the building of clientele.

97. These promises were material and were made to induce Plaintiff to purchase the device. These promises preceded and fraudulently induced Plaintiff's entry into the Purchase Agreement, and this claim arises from Defendant's pre-contractual false promises and not merely from Defendant's later nonperformance.

98. When Defendant made these promises, Defendant did not intend to perform them, or made them recklessly without a reasonable basis for believing Cutera would perform them.

99. Facts supporting the inference that Cutera lacked intent to perform when the promises were made include: the device was delivered without necessary hardware; Cutera failed to timely complete the promised one-day clinical training within ninety days; no six-month AEVA digital-marketing campaign, onboarding plan, or campaign contact was implemented for Plaintiff; no referral pipeline was activated; Burke stopped providing the promised personal rollout support shortly after the sale; and Plaintiff was repeatedly redirected among Cutera personnel without meaningful follow-through.

100. Plaintiff reasonably relied on these promises in deciding to purchase the device.

101. Plaintiff would not have purchased the device, or would not have paid the price she paid, absent these promises.

102. Plaintiff suffered damage as a direct and proximate result.

103. Defendant's conduct was fraudulent, malicious, and oppressive, and Plaintiff seeks punitive damages on the promissory-fraud claim according to proof, subject to the requirements for imposing punitive damages against a corporate defendant.

104. Cutera accepted and retained the benefits of the sale after Plaintiff repeatedly complained about incomplete delivery, missing hardware, inadequate training, lack of AEVA marketing, lack of referrals, and lack of promised post-sale support. Cutera personnel responsible for Plaintiff's account had notice of those complaints and failed to provide a refund, exchange,

rescission, or meaningful remediation.

**THIRD CAUSE OF ACTION**

**Breach of Written Contract**

105. Plaintiff incorporates paragraphs 1 through 104.

106. On June 11, 2023, Plaintiff and Cutera entered into a written Purchase Agreement for one Secret RF device.

107. The Purchase Agreement included, among other terms, the handwritten term "Aeva Marketing 6 mo" and the written training term "Clinical Training to take place within 90 days of purchase" for one day.

108. Plaintiff performed, or substantially performed, her obligations under the Purchase Agreement by agreeing to purchase the device and by paying, financing, or becoming obligated to pay the purchase price and related charges. To the extent any further performance by Plaintiff was required, that performance was excused by Cutera's prior and material breaches.

109. Cutera breached the Purchase Agreement by failing to provide one full day of clinical training within ninety days of purchase.

110. Cutera breached the Purchase Agreement by failing to provide six months of AEVA marketing or any meaningful AEVA digital-marketing services consistent with the handwritten "Aeva Marketing 6 mo" term.

111. Cutera breached the Purchase Agreement by delivering the Secret RF device without all hardware necessary for timely assembly, secure installation, and intended use, including missing screws and an unsecured handle or holster.

112. Plaintiff suffered damages as a direct and proximate result of Cutera's breaches, including

amounts paid or incurred for the device, freight, taxes, financing-related charges, expenses caused by delayed installation and missing hardware, wasted launch-event and marketing expenses, and damages caused by the failed AEVA marketing and rollout support to the extent recoverable under the Purchase Agreement and applicable law.

113. Under the Master Terms and Conditions incorporated into the Purchase Agreement, Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs if she prevails in this action.

**FOURTH CAUSE OF ACTION**

**Restitution / Rescission (Pled in the Alternative)**

114. Plaintiff incorporates paragraphs 1 through 113.

115. This claim is pled in the alternative and seeks rescission and restitution based on Defendant's fraud, false promises, and failure to provide the promised training, AEVA marketing, referral support, complete delivery, and post-sale support.

116. Plaintiff conferred a benefit on Cutera by paying, financing, or becoming obligated to pay for the Secret RF device and related charges.

117. Cutera knowingly accepted and retained that benefit.

118. Plaintiff is entitled to rescind the transaction because her consent was induced by Defendant's misrepresentations and false promises, and because the consideration Plaintiff was promised failed in whole or in part through Cutera's fault.

119. Plaintiff is ready, willing, and able to return or tender the Secret RF device upon rescission, subject to appropriate accounting, offsets, and Court order. Plaintiff seeks restitution of amounts paid or incurred in connection with the transaction, together with such other recessionary relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**

**Breach of Express Warranty (California Commercial Code § 2313)**

120. Plaintiff incorporates paragraphs 1 through 119.

121. The Purchase Agreement is a contract for the sale of goods and related services. This express-warranty claim concerns the Secret RF device and the goods described in the Purchase Agreement.

122. In the Purchase Agreement, Cutera described the goods as a "Secret RF" 2 MHz RF microneedling device featuring two handpieces, standard and high-speed, with included microneedle tip boxes. Cutera also represented that the device would be delivered with the hardware necessary for assembly, secure installation, and intended use.

123. The description of the goods and the affirmations concerning the device became part of the basis of the bargain and created express warranties.

124. The Secret RF device as delivered did not conform to those express warranties because it arrived incomplete and missing necessary hardware, including screws; it could not be timely assembled, secured, and placed into service; and the hardware and installation issues delayed Plaintiff's ability to use the device as intended.

125. Within a reasonable time after Plaintiff discovered or should have discovered the nonconformities, Plaintiff notified Cutera of the breach through repeated communications with Cutera personnel from June 2023 through October 2023.

126. To the extent Cutera contends that the Purchase Agreement or Master Terms and Conditions contain disclaimers or limitations, those provisions cannot eliminate express warranties or written promises that are inconsistent with the express terms alleged herein, and cannot bar claims based on fraudulent inducement.

127. As a direct and proximate result of Cutera's breach of express warranty, Plaintiff suffered damages, including the difference between the value of the device as warranted and the value of the device as accepted, together with incidental and consequential damages, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For rescission of the transaction, pled in the alternative;

B. For restitution of all amounts paid or incurred by Plaintiff in connection with the purchase and financing of the device, pled in the alternative;

C. For compensatory, incidental, and consequential damages in an amount to be proven at trial and to the extent recoverable under the Purchase Agreement and applicable law;

D. For punitive damages on the fraud-based tort claims according to proof;

E. For reasonable attorneys' fees and costs as permitted by contract and law;

F. For pre-judgment and post-judgment interest as permitted by law; and

G. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims so triable.

DATED: May 22, 2026

**BALESTRA WEBB LAW**

______________________________

**NICHOLAS R. WEBB, RN, DNP, ESQ.**
ATTORNEY FOR PLAINTIFF