United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAILA FARHAT,<br>Plaintiff,<br>v.<br>CUTERA, INC.,<br>Defendant. | Case No. 26-cv-05674-TSH<br><br>**ORDER TO SHOW CAUSE** |

On September 29, 2026, Defendant Cutera, Inc. filed a motion to dismiss. ECF No. 17. Having reviewed the filing, the Court has been unable to locate certain cases cited therein.[1] These apparent inaccuracies raise a concern that the filing contains fabricated or unreliable legal authorities, possibly because generative artificial intelligence was used in preparing it.

"While not inherently unethical or irresponsible, using generative AI without rigorously checking its output does present a higher risk of violating certain ethical and procedural rules." *Lnu v. Blanche*, 177 F.4th 1014, 1024 (9th Cir. 2026). "Two types of mistakes, or 'hallucinations,' are most relevant: fabrications and inaccuracies. Fabrications are instances in which the generative AI tool provides cases or quotations that do not exist at all. Inaccuracies are more subtle. The generative AI tool might cite to real authorities but provide an answer that is legally or factually inaccurate or not supported by the citation." *Id.* at 1024-25 (cleaned up; citation omitted).

*Lnu* makes clear that the use of generative AI is not itself the wrong. Rather, the governing procedural and ethical rules "are not violated at the point of research and drafting, but at the point

[1] The Court does not include the names of these cases here, as doing so could inadvertently amplify any error that these cases exist.

of signing and filing." *Lnu*, 177 F.4th at 1025. If a filing cites cases or quotations that do not exist, or misrepresents what a real authority stands for, "it generally does not matter if he pulled the hallucination or misrepresentation from the output of an artificial intelligence tool or from his own natural intelligence." *Id.* at 1025-26.

That signature carries the same consequence here. By presenting a filing, "an attorney or unrepresented party" certifies that its legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," after "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b), (b)(2). "Regardless of how the filing is prepared, the signature is an attestation that the signer has reviewed the filing and is responsible for the accuracy of its contents." *Lnu*, 177 F.4th at 1026. The signer "must read the authorities cited therein to ensure that they are real, properly attributed, and accurately represented." *Id.* As to attorneys, competence and diligence require more than confirming that a cited case exists and is "roughly on point"; counsel "must also read and reason." *Id.*

While the Court does not prohibit or oppose the use of AI in legal advocacy, if AI tools are utilized, "[l]awyers using generative AI must thus be aware of the tendency of generative AI to make these mistakes and guard against them." *Lnu*, 177 F.4th at 1025 (citation omitted); *Oneto v. Watson*, 808 F. Supp. 3d 974, 979, 981 (N.D. Cal. 2025) (counsel has a duty to "independently verif[y] the accuracy of AI-generated content."). Thus, counsel of record is responsible for ensuring the accuracy and reliability of all submissions to the Court, including any content drafted with the assistance of artificial intelligence tools. An attorney cannot discharge the obligation to verify a filing merely by delegating research or drafting to another attorney, employee, contractor, or technological tool. *See Lnu*, 177 F.4th at 1028-29 (rejecting argument that counsel may rely on subordinates to perform substantive citation checking without personally reviewing the authorities cited in the filing). The duty also does not end when an inaccurate filing is discovered. An attorney who learns that a filing contains a fabricated authority, materially inaccurate quotation, or similar error should "immediately alert the court and opposing counsel of the error and disclose its source," *Lnu*, 177 F.4th at 1031, including by accurately describing the nature of the error and

how it occurred. *Id.* at 1030. An attempt merely to substitute a valid citation for a fabricated one, without disclosing the nature and source of the original error, may itself implicate counsel's duty of candor. *Id.*

Accordingly, if counsel used generative AI, or if counsel relied on work product prepared by another person who may have used generative AI, the relevant question is not the mere use of that technology. The question is whether counsel personally conducted the review required before signing and filing the submission and whether counsel has been candid with the Court concerning any errors subsequently discovered.

Accordingly, **IT IS HEREBY ORDERED** that counsel for Cutera shall file a declaration by October 29, 2026 that:

(1) identifies, by page and line and with the relevant language quoted verbatim, each statement, quotation, citation, or representation counsel has determined, or has reason to believe, is inaccurate, fabricated, materially misleading, unsupported, or otherwise requires correction;

(2) explains the origin of each such item, including how it came to be included in the filing and whether any generative artificial intelligence or other automated research or drafting tool was used;

(3) describes the steps counsel took before filing to verify each such item, including any review of cited authorities, quotations, citations, and the record; and

(4) provides any necessary corrections, with accurate citations and pinpoint references, and identifies any other portion of the filing requiring correction based on counsel's review.

The declaration must be based on the declarant's personal review of the cited authorities. Counsel is advised that any response must be complete and candid concerning the source of the apparent errors. As *Lnu* emphasizes, concealment, an unsupported characterization of fabricated citations as typographical or copy-and-paste errors, or an incomplete account of the role of generative AI may independently aggravate the conduct at issue. Conversely, prompt and transparent disclosure of an error and its source may bear on the appropriate response. *See Lnu*, 177 F.4th at 1031 (observing that, had counsel promptly disclosed the use of AI and apologized, "lesser sanctions may have been warranted").

Failure to comply with this Order may result in appropriate sanctions or remedial measures, which may include striking all or part of the challenged filing, disregarding unsupported arguments, monetary sanctions where authorized, filing restrictions where legally appropriate, referral to disciplinary authorities in the case of counsel, or other sanctions warranted by the circumstances.

**IT IS SO ORDERED.**

Dated: October 22, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California