United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAILA FARHAT,
Plaintiff,
v.
CUTERA, INC.,
Defendant.

Case No. 26-cv-05674-TSH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 17

## I. INTRODUCTION

Plaintiff Laila Farhat alleges Defendant Cutera, Inc. fraudulently induced her to buy a $75,000 Secret RF microneedling device by misrepresenting local patient demand and its referral network, and by making promises of referrals and support it never meant to keep. Pending before the Court is Cutera's Motion to Dismiss the first and second causes of action in Farhat's First Amended Complaint (FAC) under Federal Rule of Civil Procedure 12(b)(6). ECF No. 17. Farhat filed an Opposition (ECF No. 23) and Cutera filed a Reply (ECF No. 24). The Court finds this matter suitable for disposition without oral argument and **VACATES** the December 10, 2026 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II. BACKGROUND

Farhat owns and operates Jana HealthCare, a primary care clinic in Brooklyn, New York, as a sole proprietorship. FAC ¶¶ 1–4, ECF No. 16. Cutera is a Delaware corporation with its principal place of business in Brisbane, California. *Id.* ¶ 5.

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 19.

In or about May 2023, Cutera sales representative Sharon Burke visited Farhat's clinic to solicit the sale of a Secret RF microneedling device. *Id.* ¶ 16. After Farhat told Burke she was not ready to buy, Burke urged her to attend a Cutera promotional event in Manhattan. *Id.* ¶¶ 18–19. Farhat attended the event on June 11, 2023. *Id.* ¶ 20. There, Burke allegedly represented that (a) there was "huge demand" for Secret RF treatments in the Brooklyn service area surrounding Jana HealthCare, with only "one or two" other providers farther away; (b) Cutera had an established pipeline or referral list of patients actively seeking Secret RF providers; (c) Jana HealthCare could be placed into that existing referral infrastructure based on geographic proximity and would thereby receive direct referrals of paying patients; and (d) Cutera possessed information about patient demand and provider availability in Farhat's area that supported these representations. *Id.* ¶¶ 22(a)–(d), 86–87. Burke also allegedly promised Cutera would provide in-person clinical training, ongoing technical, account, and rollout support, six months of marketing support from a company called AEVA, direct patient referrals or referral support through Cutera's referral network, and Burke's own continuing personal involvement in the rollout and in helping Farhat build clientele. *Id.* ¶ 22(e)–(i). Farhat alleges she declined to buy before the event but changed her position after the presentations and representations. *Id.* ¶ 24.

The same day, Farhat signed a one-page Purchase Agreement for one Secret RF device at a price of $75,000 plus freight and tax. *Id.* ¶¶ 25–28. The Purchase Agreement includes a handwritten term, "Aeva Marketing 6 mo," and a term providing for one day of clinical training within 90 days of purchase. *Id.* ¶¶ 29–30. It incorporates Cutera's Master Terms and Conditions.[2] *Id.* ¶ 31. As Farhat quotes them, § 5.2 of the Master Terms, titled "Limited Warranty for Product Purchases," provides in part that "Cutera makes no warranty or representation to Customer except

---

[2] The Court considers the Purchase Agreement and Master Terms only to the extent the FAC quotes and relies on them. Farhat quotes the relevant provisions in the FAC, relies on them in her opposition, and does not dispute their authenticity. Opp'n at 9–10. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation-by-reference doctrine permits consideration of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" (citation omitted)). The Court does so to determine what the documents say, not to resolve disputed facts against Farhat. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (cautioning that the doctrine does not allow defendants to "insert their own version of events into the complaint to defeat otherwise cognizable claims").

for those expressly contained in this section" and that "Customer acknowledges that it has not relied upon any representation or warranty made by any person, except as specifically provided in this section," and § 11 provides that "[t]he Order (including these Terms) constitute the entire agreement between the parties and supersede any prior or contemporaneous agreements or representations, written or oral, concerning the subject matter of that Order." *Id.* ¶ 79. Farhat alleges the Master Terms are a standardized, pre-printed form that was presented on a take-it-or-leave-it basis, that no provision was negotiated or explained, and that she was not represented by counsel. *Id.* ¶ 78.

After the sale, the device arrived with missing hardware, and Farhat sought installation, training, and marketing support. *Id.* ¶¶ 35–41. Burke referred her to another Cutera employee, and on or about July 17, 2023, Burke sent contact information for two others but then stopped responding. *Id.* ¶¶ 40, 42. Farhat alleges Burke left Cutera in July 2023 and began working for a different medical-device company that same month. *Id.* ¶ 42. Other Cutera personnel, principally John Hicks, continued to communicate with Farhat about installation, training, marketing, and account issues through at least October 2023. *Id.* ¶¶ 43–60. Farhat alleges Cutera never identified or activated the referral pipeline or list Burke described, never sent her any company-generated patient referrals, and did not provide six months of AEVA marketing or a full day of clinical training, and that no one from Cutera attended the launch event Farhat held in October 2023. *Id.* ¶¶ 49–52, 59.

Farhat filed this action on June 11, 2026, and filed the operative FAC on September 14, 2026. The FAC asserts five claims: (1) intentional misrepresentation/fraudulent inducement; (2) promissory fraud; (3) breach of written contract; (4) restitution/rescission, pleaded in the alternative; and (5) breach of express limited warranty. FAC ¶¶ 85–133. Cutera moves to dismiss the first and second claims.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Rule 8 provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). While a party need not give "detailed factual allegations," they must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589-90 (2026) ("[T]o nudge a claim across the line from conceivable to plausible, a plaintiff must plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (cleaned up).

Because the first and second causes of action sound in fraud, they must satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although California law supplies the elements, Rule 9(b)'s particularity requirement is "a federally imposed rule" that applies to state-law fraud claims in federal court. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). The circumstances must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). That generally means pleading "the who, what, when, where, and how of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106). Rule 9(b) also provides, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). That relaxation does not excuse a plaintiff from pleading facts that make the alleged state of mind plausible. *See Iqbal*, 556 U.S. at 686–87.

In considering a motion to dismiss under Rule 12(b)(6), courts accept the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. First Cause of Action: Intentional Misrepresentation / Fraudulent Inducement

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

#### 1. Falsity

Cutera does not argue the FAC fails to identify who made the challenged statements (Burke), when and where she made them (at the June 11, 2023 event), or what she said. *See* FAC ¶¶ 20–22, 86–87. It argues the FAC does not plead why the statements were false when made, because it alleges falsity only on information and belief and infers it solely from Cutera's later failure to identify demand data, enroll Farhat in a referral pipeline, or generate referrals. Mot. at 8–9.

In this Circuit, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge," but "this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted). Similarly, the plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual

information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).

The challenged representations concern Cutera's own internal demand information, its knowledge of competing providers, and its referral infrastructure, matters the FAC alleges were peculiarly within Cutera's knowledge. FAC ¶¶ 76, 88, 99. Cutera does not seriously dispute that. Mot. at 8 ("Even accepting that some information about Cutera's internal demand and referral data is peculiarly within Cutera's knowledge . . . ."). The question is therefore whether the FAC states the factual basis for Farhat's belief.

Farhat alleges that, despite over four months of repeated follow-up with Burke, Mary Evans, Hicks, and other Cutera personnel, Cutera never identified the demand data Burke described, never identified or enrolled Jana HealthCare in a referral pipeline or list, and never sent a single company-generated referral, and that Cutera's communications instead addressed payment processing, AEVA coordination, marketing collateral, event logistics, training, and hardware problems. FAC ¶¶ 51, 73, 90–92. Cutera is right that a seller's later failure to deliver a promised result does not by itself show that a pre-sale statement was false when made, and *Neubronner* found a similarly retrospective basis insufficient. *See* 6 F.3d at 672 (allegations that the defendant was an investment banker for a company that "eventually sank into financial trouble" did not state a sufficient factual basis for the plaintiff's information-and-belief allegations). But the FAC's allegations are more specific than a generalized disappointment after the fact. According to Farhat, Burke allegedly did not merely promise future results. She allegedly represented that Cutera already had an established referral pipeline or list of patients actively seeking Secret RF providers, and that Jana HealthCare could be placed into it. FAC ¶¶ 22(b)–(c), 86–87. If the patient list or referral pipeline described by Burke existed, Cutera might reasonably have been expected to identify it, to place Farhat in it, or to explain how Farhat could access it when she repeatedly requested referral support. That Cutera, through several personnel over several months, did none of those things permits a reasonable inference that the pipeline did not exist as Burke described it. Farhat does not suggest otherwise. She disclaims any contention "that post-sale nonperformance alone proves contemporaneous falsity," and relies instead on Cutera's failure to

identify "the very system represented as already existing." Opp'n at 8. She acknowledges that the absence of any identified mechanism "supports, although it does not compel," the inference that the pipeline did not exist when Burke spoke, *id*., but plausibility does not require that an inference be compelled. In reply, Cutera argues the FAC does not date the pipeline's absence to May or June 2023. Reply at 3. But the inference Farhat draws is not that a pipeline once existed and later lapsed. It is that Cutera, through several personnel and beginning within weeks of the sale, could identify no demand data, enrollment process, or referral list at all, which permits an inference that the represented operational system did not exist in June. That inference remains contestable: a functioning program could have existed despite subsequent failures to identify or use it. Cutera's competing explanations remain plausible, but, as discussed next, plausible competing explanations do not warrant dismissal.

That inference is not the only one available. Cutera suggests others, such as poor post-sale execution, changed market conditions, or a referral program that "did not perform as hoped." Mot. at 9. But if both parties' explanations are plausible, dismissal is not warranted. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."). Cutera's reliance on *Shandong Yinguang Chemical Industries Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010), does not change that conclusion. That case is not binding, as Cutera acknowledges, Reply at 3, and it involved allegations that money had been moved between companies, conduct that "may be consistent with fraud" but could have "legitimate or illegitimate reasons," with "no details that would corroborate a fraudulent scheme." *Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F.3d at 1034. Here, by contrast, the FAC alleges a specific, checkable representation about the existence of a particular referral system and a specific course of dealing in which Cutera never produced it.

Discovery may show that Burke's statements were true. But Rule 9(b) permits information-and-belief allegations concerning facts peculiarly within the defendant's knowledge when the plaintiff pleads a factual basis for the inference, *see Neubronner*, 6 F.3d at 672, and the

FAC gives Cutera notice of the particular statements challenged and the basis on which Farhat contends they were false. *See Kearns*, 567 F.3d at 1124. The inference is strongest concerning the alleged existing referral pipeline. The absence of an identified pipeline does not, standing alone, establish that representations about the level of local patient demand or the precise number of competing providers were false. Nevertheless, Cutera does not develop a representation-by-representation challenge, and the pleaded particulars concerning the referral-system representation suffice to sustain Count One at this stage. The Court does not decide whether every alleged statement independently supports liability.

**2. Justifiable Reliance**

Cutera next argues Farhat cannot plausibly plead justifiable reliance because § 5.2 of the Master Terms disclaims reliance on any representation other than the limited warranty and § 11 integrates the parties' agreement. Mot. at 9–11. Cutera acknowledges that, under *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013), and California Civil Code section 1668, such language does not categorically bar a fraud claim, but it argues that its specific terms bear on whether reliance was reasonable. Mot. at 4, 10.

Justifiable reliance requires that "circumstances were such to make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation," and reasonableness "is judged by reference to the plaintiff's knowledge and experience." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 794 (2013) (cleaned up). "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Id.*

This is not that rare case. First, although the Master Terms contain broad non-reliance and integration language that encompasses representations generally, they do not specifically identify the alleged statements about demand and the referral system. Section 5.2 appears under the heading "Limited Warranty for Product Purchases," and its non-reliance sentence is tied to "this section." Neither § 5.2 nor § 11 specifically addresses patient demand, competing providers, referral lists or pipelines, or patient referrals. The clause nevertheless expressly disclaims reliance on representations outside the limited warranty, and the Court considers that language as part of

the reliance inquiry rather than disregarding it. FAC ¶¶ 79–80. Cutera asserts the disclaimer reaches "precisely the category of representation" at issue, Mot. at 11, but the general language does not say so. Farhat concedes that § 5.2 is "facially broad" and does not claim that it "expressly exempts referral representations," Opp'n at 9, but that breadth does not establish a direct contradiction between the contractual terms and the specific alleged representations. In its reply, Cutera argues the disclaimer "squarely covers the representations at issue," Reply at 4, but it identifies no language in §§ 5.2 or 11, as quoted in the FAC, that addresses demand, competing providers, or referrals, and it cites no authority treating a generic non-reliance clause as the kind of specific, direct contradiction that makes reliance unreasonable as a matter of law. "Reliance on pre-contract statements when contract language contradicts them is only per se unreasonable when the content of the conflicting statements is specific and the contradiction is direct." *Cress v. Nexo Fin. LLC*, 2023 WL 6609352, at *12 (N.D. Cal. Oct. 10, 2023) (quoting *MegaFon PJSC v. Hewlett Packard Enter. Co.*, 2019 WL 1130481, at *7 (N.D. Cal. Mar. 12, 2019)). In *Cress*, the Court declined to find reliance unreasonable as a matter of law where the plaintiff allegedly agreed that he had "not relied on any statement or representations of Nexo" outside the agreement, because the agreement was not "directly contradictory" of the alleged pre-contract misrepresentations. *Id.* The same approach applies here, and the case for finding no direct contradiction is stronger, because the alleged statements concern the existence of a specific referral system and the disclaimer is generic.

Second, Cutera describes Farhat as "a sophisticated commercial buyer" who signed an "express, specific disclaimer of reliance." Mot. at 10. But the FAC alleges the opposite: that Farhat is a primary care clinician new to aesthetic services, that she was unrepresented, that the Master Terms were a pre-printed, take-it-or-leave-it form that was not negotiated or explained, and that she had no practical means of verifying Cutera's internal demand and referral information. FAC ¶¶ 78, 83. The Court must accept those allegations as true at this stage. *See Khoja*, 899 F.3d at 1002; *Cress*, 2023 WL 6609352, at *12 (declining to hold that the plaintiff's status as an accredited investor rendered reliance unreasonable as a matter of law, where the case on which the defendant relied placed "much more emphasis" on the undisputed fact that the plaintiff there was

United States District Court
Northern District of California

represented by counsel in negotiations). In reply, Cutera argues these are "the ordinary circumstances of a commercial sales transaction." Reply at 4. Perhaps so, but whether a buyer who is new to the product line, unrepresented, and handed a pre-printed form could reasonably rely on the seller's statements about the seller's own internal data depends on "the plaintiff's knowledge and experience," *West*, 214 Cal. App. 4th at 794, and is ordinarily a question of fact. Nor is the reliance allegation merely conclusory: Farhat alleges she declined to buy before the June 11 promotional event and changed her position afterward. FAC ¶¶ 18, 24, 95–96.

Third, Farhat acknowledges that neither California Civil Code section 1668 nor *Riverisland* relieves her of the burden to plead justifiable reliance, Opp'n at 9, so the Court need not decide whether either independently precludes enforcement of the non-reliance and integration language against a fraud claim. *See Riverisland*, 55 Cal. 4th at 1182–83 ("[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.") (quotation omitted)); *id.* at 1183 & n.11 (declining to decide, in the first instance, whether reliance was justifiable where the plaintiffs admitted they did not read the contract). Nor does the Court rely on Farhat's allegation that her assent to the Master Terms was itself procured by the alleged misrepresentations, FAC ¶ 81, which Cutera characterizes as conclusory. Mot. at 10–11. Based on the allegations, whether Farhat's reliance was reasonable cannot be resolved on the pleadings. This conclusion does not render non-reliance clauses immaterial or foreclose reconsideration on a developed record.

Accordingly, the Court **DENIES** Cutera's motion to dismiss the First Cause of Action.

**B. Second Cause of Action: Promissory Fraud**

"Promissory fraud is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 973–74 (1997) (cleaned up). To plead promissory fraud, a plaintiff must plead the same elements as she would if asserting a general fraud claim. *Id.* at 974 (stating that the elements of promissory fraud are "(a)

misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"). But "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) (citation omitted); *see also Riverisland*, 55 Cal. 4th at 1183 ("the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance"). At the same time, *Tenzer* recognizes that "fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." 39 Cal. 3d at 30 (citation omitted). And although intent may be averred generally under Rule 9(b), a plaintiff "must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Cress*, 2023 WL 6609352, at *10 (quoting *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109–10 (C.D. Cal. 2015) (citation omitted)).

The second claim rests on three alleged pre-contract promises: (a) direct patient referrals or referral support through Cutera's referral network; (b) ongoing account and rollout support directed to building clientele for the new service; and (c) Burke's continuing personal involvement in the rollout and in building clientele. FAC ¶ 102. Farhat states this claim does not rest on the written training and AEVA marketing terms, which are the subject of her contract claim. *Id.* ¶¶ 103, 109.

Cutera argues the FAC's allegations of contemporaneous intent "reduce to" two facts: that Burke left Cutera about five weeks after the sale, and that Farhat was thereafter redirected among other Cutera personnel. Mot. at 11–12 (citing FAC ¶¶ 104–05). That description is incomplete. Paragraph 105 also alleges that "no referral enrollment process was ever identified or activated for Jana HealthCare and no company-generated referral was ever sent," and ¶ 51 alleges the same. The motion does not separately analyze those allegations as evidence bearing on the referral-related promise.

As to the first promise, the Court concludes the FAC plausibly alleges it was made without

the intent to perform. The promise was to provide referrals through the very referral network that the FAC plausibly alleges did not exist as represented. FAC ¶¶ 22(b)–(c), 90–92, 102(a). If Cutera represented that an operational referral network already existed while knowing the represented mechanism was not in place, the asserted promise to generate referrals through that mechanism supports an inference of contemporaneous intent not to perform. The FAC supports that inference at the pleading stage and also alleges a motive: to close a sale to a customer who had said she was not ready to buy and who changed her position only after the event, *id.* ¶¶ 18, 24, 105., and that Cutera never identified or activated any enrollment process for Farhat or provided a referral. Those allegations permit, but do not compel, an inference that Cutera did not attempt to perform the particular referral-network promise. *Id.* ¶¶ 51, 105. Taken together with the allegation that the referral mechanism was never identified, those circumstances permit an inference of more than mere nonperformance. They may resemble the "failure even to attempt performance" that *Tenzer* identifies as probative of fraudulent intent, but the absence of referrals alone would not suffice. 39 Cal. 3d at 30. They are also facts within Cutera's possession. *See Cress*, 2023 WL 6609352, at *11 (finding sufficient at the pleading stage an allegation that the defendant "had no intention of honoring the promises when it made them," coupled with "straightforward allegations regarding [its] motivations," a conclusion the court found "particularly apt where facts related to [the defendant's] intent are uniquely within its possession" (citing *Soo Park*, 851 F.3d at 928)). *Tenzer*'s rule that nonperformance alone is insufficient is not to the contrary, because the FAC alleges more than nonperformance. Cutera argues the FAC describes only "ordinary post-sale account administration" rather than hasty repudiation or abandonment. Reply at 5. But in addressing Count Two, Cutera again does not address the allegation that no referral enrollment process was ever identified or activated, which is specific to the referral promise. Continued communications about installation, training, and marketing do not show an attempt to perform that promise.

The second and third promises stand differently. The FAC pleads no facts, beyond later nonperformance, suggesting that Cutera or Burke lacked the intent to provide ongoing account and rollout support when the promise was made. To the contrary, it alleges that Cutera personnel

continued to communicate with Farhat and provided “some intermittent post-sale communications and assistance.” FAC ¶ 52; *see also id.* ¶¶ 43–60, 71. A failure to provide support as extensive as Farhat expected is the kind of unkept promise that *Tenzer* and *Riverisland* hold insufficient. As to Burke’s continuing personal involvement, the only fact offered is that Burke stopped responding about five weeks after the sale and left Cutera for another medical-device company the same month. *Id.* ¶¶ 42, 105. Farhat’s assertion that Burke “was already planning or arranging to leave Cutera” when she made the promise, *id.* ¶ 105, rests on nothing but that timing. The FAC does not allege, for example, when Burke began seeking other employment, when she accepted her new position, or any statement suggesting that she intended to leave. Although facts about Burke’s plans may be within Burke’s or Cutera’s knowledge, a plaintiff pleading on information and belief must still state the factual basis for the belief, *Neubronner*, 6 F.3d at 672, and the timing of an employee’s departure is as consistent with a change in circumstances after the promise was made as with an intent, at the time, not to perform. The FAC therefore does not plausibly allege that the second and third promises were made without the intent to perform. Farhat’s opposition does not change that conclusion. She acknowledges that “[e]mployee turnover and imperfect execution are competing explanations, not admissions of fraud,” Opp’n at 11, and her argument that Evans’s and Hicks’s “ordinary training, payment coordination, or collateral marketing activity” would not satisfy the distinct promises in Count Two, *id.*, goes to whether those promises were kept, not to whether Cutera intended to keep them when they were made. Nor does Hicks’s statement that post-sale arrangements still needed to be “all set in place,” FAC ¶ 105, show “continued assurances after it was clear he would not perform.” *Tenzer*, 39 Cal. 3d at 30. Read in Farhat’s favor, that statement is at least as consistent with ongoing efforts to perform as with an intent not to perform.[3]

Accordingly, the referral-network promise pleaded in FAC ¶ 102(a) states a viable

[3] Cutera’s observation that Farhat identifies no fact, such as the timing of a job search, offer, or application predating June 11, 2023 that would move the inference beyond speculation is well taken. Reply at 5. The FAC pleads Burke’s departure on information and belief drawn from publicly available professional-profile information, FAC ¶ 42, but nothing pleaded ties that information to what Burke intended when she made the promise.

promissory-fraud theory. The allegations concerning the distinct promises in ¶ 102(b)–(c), considered independently, do not plausibly plead contemporaneous fraudulent intent. Accordingly, the Court **DENIES** the motion to dismiss the Second Cause of Action to the extent it is based on the referral network promise in FAC ¶ 102(a), and **GRANTS** the motion as to the remainder of the claim based on independent theories alleged in ¶ 102(b) and (c).

**C. Leave to Amend**

Cutera asks that dismissal be with prejudice because Farhat has already amended once and no amendment can supply particularized, contemporaneous facts. Mot. at 12–13. The Court disagrees. Leave to amend should be granted "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127 (citations and quotations omitted). Farhat represents that her prior amendment followed the parties' meet and confer and preceded any ruling, Opp'n at 11, so this is not a case of "repeated failure to cure deficiencies by amendments previously allowed." *See Carvalho*, 629 F.3d at 892–93. The deficiency identified above is a lack of facts showing that the second and third promises were made without the intent to perform, and Farhat may be able to cure it by alleging additional facts, such as facts about when Burke began pursuing other employment or other circumstances bearing on intent at the time the promises were made.

Farhat identifies, as a subject for potential amendment, "substantiated timing of Burke's contemplated employment transition," while acknowledging that it is not a fact offered outside the FAC and that none of her listed subjects is "represented here as obtained or established." Opp'n at 11–12. The Court does not treat those subjects as pleaded facts, and the other subjects she lists go to falsity, which the Court has found adequately pleaded. But the possibility that such facts exist, together with the presumption in favor of amendment, precludes a finding that amendment would be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.").

Cutera responds that a list of categories of material Farhat hopes to obtain is not a basis for leave to amend, and that she has already had "two prior opportunities" to plead. Reply at 6. The

United States District Court
Northern District of California

United States District Court
Northern District of California

first point is fair, but the question is whether the pleading "could not possibly be cured," *Lopez*, 203 F.3d at 1127, not whether Farhat has already identified the curative facts, and the FAC itself indicates that facts about Burke's employment transition may be available from public sources. FAC ¶ 42. As to the second point, the original complaint and the FAC were filed before any ruling by this Court identified deficiencies, so Farhat has not yet had an opportunity to cure after notice of them. Cutera's further argument that amendment cannot cure a reliance defect, Reply at 6, is moot because the Court has found reliance adequately pleaded. Cutera's assertion that "there is no indication that any exists," Mot. at 13, does not show futility. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (a court may deny leave to amend where "proposed amendments would fail to cure the pleading deficiencies and amendment would be futile"). The Court therefore grants leave to amend.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Cutera's motion to dismiss as follows:

1. The motion is **DENIED** as to the First Cause of Action.

2. The motion is **DENIED** as to the Second Cause of Action to the extent that claim is based on the referral network theory. FAC ¶ 102(a).

3. The motion is **GRANTED** as to the Second Cause of Action to the extent that claim is based on the alleged promises of ongoing account and rollout support and Burke's continuing personal involvement. FAC ¶ 102(b)–(c). That portion of the claim is **DISMISSED WITH LEAVE TO AMEND**.

Farhat may file an amended complaint within 21 days of the date of this Order. Unless expressly permitted by this Order, Farhat may amend the complaint only to correct the deficiencies identified herein. Farhat may not add new claims or parties or make other changes to the complaint without further leave of Court or the opposing party's written consent under Federal Rule of Civil Procedure 15(a)(2).

If Farhat files an amended complaint, Cutera shall respond within 14 days. *See* Fed. R. Civ. P. 15(a)(3). If Farhat does not timely amend, the case will proceed on the FAC as limited by

United States District Court
Northern District of California

this Order, and Cutera shall respond within 14 days of the deadline to amend. *See* Fed. R. Civ. P. 12(a)(4)(A), 15(a)(3).

**IT IS SO ORDERED.**

Dated: November 24, 2026

THOMAS S. HIXSON
United States Magistrate Judge